PRESENT: Hassell, C.J., Keenan, Koontz, Kinser, Goodwyn and Millette, JJ., and Russell, S.J.


DURRETTEBRADSHAW, P.C.

v.          Record No. 072418                OPINION BY
                                     JUSTICE S. BERNARD GOODWYN
MRC CONSULTING, L.C.                      JANUARY 16, 2009


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Charles E. Poston, Judge

In this appeal, we consider whether a defendant must act with the intent to interfere with a contract to which the plaintiff was a party in order for the plaintiff to have a claim against that defendant for tortious interference with contract rights.

Background

MRC Consulting, L.C. ("MRC") filed a complaint in the Circuit Court of the City of Norfolk purporting to state a cause of action against DurretteBradshaw, P.C. ("DurretteBradshaw") for tortious interference with a contractual relationship between SouthStar Systems, Inc. ("SouthStar") and MRC. DurretteBradshaw filed a demurrer, asserting that MRC's complaint did not state a cause of action against DurretteBradshaw for tortious interference with the contract between SouthStar and MRC, because MRC did not allege that DurretteBradshaw intended to interfere with the contract between MRC and SouthStar. The circuit court overruled the

demurrer. The matter proceeded to trial before a jury. The jury returned a verdict in favor of MRC in the amount of $253,875.72, and the circuit court entered a judgment confirming that verdict. DurretteBradshaw appeals.[*]

The principles of appellate review that guide our consideration of this appeal are well-settled. "A demurrer admits the truth of the facts contained in the pleading to which it is addressed, as well as any facts that may be reasonably and fairly implied and inferred from those allegations. A demurrer does not, however, admit the correctness of the pleader's conclusions of law." Yuzefovsky v. St. John's Wood Apts., 261 Va. 97, 102, 540 S.E.2d 134, 136–37 (2001) (internal citation omitted). Accordingly, we will consider the facts stated, and those reasonably inferred from the complaint, in a light most favorable to the plaintiff, but we will review the sufficiency of the legal conclusions ascribed to those facts de novo. Id. at 102, 540 S.E.2d at 137. Applying this standard, the relevant facts and legal conclusions in the plaintiff's complaint are as follows. SouthStar entered a contract ("SouthStar/SEI contract") with

---

[*] The Court will not address any of DurretteBradshaw's assignments of error other than that concerning the demurrer because resolution of that assignment of error is dispositive. See, e.g., Lynchburg Div. of Soc. Servs. v. Cook, 276 Va. 465, 477, 666 S.E.2d 361, 367 (2008); Pryor v. Commonwealth, 276 Va. 312, 316 n.1, 661 S.E.2d 820, 821 n.1 (2008).

Spring Engineers of Dallas, Ltd., t/a SEI Metalforms, Ltd. ("SEI") that involved the sale of 5,000 computer communication boards from SouthStar to SEI at the price of $205 each, for a total contract price of $1,025,000. SouthStar expected to realize a profit of $200 per unit.

Before the contract could be fulfilled, SouthStar suffered a casualty loss to its inventory of communication boards. SouthStar presented a claim to Maryland Casualty Company, its insurer, for business interruption and lost profits concerning the SouthStar/SEI contract. Maryland Casualty did not pay the claim.

To fulfill the obligation it had to SEI, and to mitigate its loss, SouthStar enlisted the assistance of MRC. MRC agreed to fund the redesign of communication boards to meet SEI's requirements, and to pay the cost to manufacture those boards. In exchange, SouthStar agreed to buy the boards it needed for the SouthStar/SEI contract from MRC for $102.50 each. MRC expected to realize a profit of $500,000 on the transaction.

Represented by DurretteBradshaw, Maryland Casualty filed a declaratory judgment action seeking a determination that Maryland Casualty was not required to pay SouthStar's business interruption and lost profit claims. During this representation of Maryland Casualty, one of DurretteBradshaw's attorneys, acting within the scope of his employment,

purposefully disclosed to SEI confidential information DurretteBradshaw had obtained about SouthStar while investigating the insurance claim.  The attorney purportedly made this disclosure hoping that SEI would cancel the SouthStar/SEI contract.  SEI was informed about SouthStar's large profit margin and that SouthStar was financially unable to perform its contract with SEI.  After the disclosure, SEI did, in fact, cancel the SouthStar/SEI contract, eliminating SouthStar's claim for business interruption and lost profits under its Maryland Casualty policy.

MRC alleged, in its complaint, that when DurretteBradshaw disclosed the confidential information to SEI, DurretteBradshaw knew of MRC's contract with SouthStar and MRC's involvement in the performance of the SouthStar/SEI contract.  MRC claimed that DurretteBradshaw intentionally interfered with the SouthStar/SEI contract, knowing of the obvious impact of that interference, not only on SouthStar, but on MRC as well.  MRC claimed that, as a result of DurretteBradshaw's interference with the SouthStar/SEI contract, MRC lost the profits it would have made from its contract with SouthStar, and thus was entitled to damages because of DurretteBradshaw's actions.

## Analysis

DurretteBradshaw contends that the circuit court erred when it overruled DurretteBradshaw's demurrer to MRC's

complaint.  DurretteBradshaw argues that its demurrer should have been sustained because MRC did not plead that DurretteBradshaw intended to affect MRC when it disclosed information about SouthStar to SEI.  MRC counters that its complaint states a cause of action for tortious interference because the complaint contains allegations that DurretteBradshaw intentionally interfered with the SouthStar/SEI contract, knowing the obvious impact such interference would have upon the contract MRC had with SouthStar.

In Chaves v. Johnson, 230 Va. 112, 335 S.E.2d 97 (1985), this Court expressly recognized that the cause of action for tortious interference with contract rights is succinctly described in the Restatement (Second) of Torts § 766 (1977):

> Intentional Interference with Performance
> of Contract by Third Party
>
> One who intentionally and improperly interferes with
> the performance of a contract (except a contract to
> marry) between another and a third person by inducing
> or otherwise causing the third person not to perform
> the contract, is subject to liability to the other
> for the pecuniary loss resulting to the other from
> the failure of the third person to perform the
> contract.

Chaves, 230 Va. at 120, 335 S.E.2d at 102.

This Court, in Chaves, stated the elements necessary to support a cause of action for tortious interference with contract rights.  The elements required for a prima facie

5

showing of the tort are: (i) the existence of a valid contractual relationship or business expectancy; (ii) knowledge of the relationship or expectancy on the part of the interferor; (iii) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (iv) resultant damage to the party whose relationship or expectancy has been disrupted. Id.

MRC alleged that a contract existed between SouthStar and MRC, that DurretteBradshaw knew of this relationship, and that MRC lost the profits it would have made if the contract between MRC and SouthStar had been fulfilled. The resolution of this appeal hinges upon whether MRC's complaint alleges an act that constitutes "intentional interference inducing or causing a breach or termination of the relationship or expectancy" between MRC and SouthStar.

DurretteBradshaw argues that the intentional interference inducing the breach or termination of the contract must be intentional interference with the specific contract for which the plaintiff claims damages. Thus, DurretteBradshaw argues that MRC's complaint is insufficient because it fails to allege that DurretteBradshaw's actions were intended to induce or cause a breach of the contract between MRC and SouthStar. MRC, on the other hand, claims that a plaintiff need only plead intentional action, on the part of the defendant, with the

knowledge such action will result in a breach or termination of the plaintiff's relationship or expectancy; the defendant's purposeful act need not be with the intent to disrupt the plaintiff's relationship or expectancy. Thus, according to MRC, it stated a cause of action for tortious interference against DurretteBradshaw by alleging intentional interference by DurretteBradshaw with the SouthStar/SEI contract, and alleging that such interference resulted in the breach or termination of MRC's relationship or expectancy with SouthStar, the existence of which DurretteBradshaw was aware. We disagree with MRC.

This Court applied § 766 of the Restatement (Second) of Torts in Chaves. We find the commentary accompanying § 766 of the Restatement (Second) of Torts to be instructive.

The plaintiff relies on Comment j to § 766 of the Restatement in support of its theory of the case. That Comment states:

> j. *Intent and purpose*. The rule stated in this Section is applicable if the actor acts for the primary purpose of interfering with the performance of the contract, and also if he desires to interfere, even though he acts for some other purpose in addition. The rule is broader, however, in its application than to cases in which the defendant has acted with this purpose or desire. It applies also to intentional interference, . . . in which the actor does not act for the purpose of interfering with the contract or desire it but knows that the interference is certain or substantially certain to occur as a result of his action. The rule applies, in other

7

words, to an interference that is incidental to the actor's independent purpose and desire but known to him to be a necessary consequence of his action.

Restatement (Second) of Torts § 766, cmt. j (1979).

However, Comment p to § 766 of the Restatement further explains § 766 by stating:

The person protected by the rule stated in [§ 766] is the specified person with whom the third person had a contract that the actor caused him not to perform. To subject the actor to liability under this rule, his conduct must be intended to affect the contract of a specific person. It is not enough that one has been prevented from obtaining performance of a contract as a result of the actor's conduct. (Cf. § 766A). Thus, if A induces B to break a contract with C, persons other than C who may be harmed by the action as, for example, his employees or suppliers, are not within the scope of the protection afforded by this rule, unless A intends to affect them. Even then they may not be able to recover unless A acted for the purpose of interfering with their contracts.

Restatement (Second) of Torts § 766, cmt. p (1979).

Reading these Comments harmoniously, it is clear that Comment j states the intended parameters of the cause of action for tortious interference with contract rights, and Comment p delineates the persons the cause of action is intended to protect. Comment p makes it clear that, unlike a party to the contract that the defendant induced a third person not to perform, a plaintiff who is not a party to such contract must prove that the defendant acted with the purpose of interfering with the plaintiff's contract, in order to maintain a cause of action for

8

tortious interference with contract rights against that defendant. Thus, if DurretteBradshaw induced SEI to break its contract with SouthStar, persons or entities other than SouthStar, such as MRC, who may have been harmed by DurretteBradshaw's act, may not maintain a cause of action for tortious interference with contract against DurretteBradshaw, unless such persons or entities can prove that DurretteBradshaw interfered with the SouthStar/SEI contract for the purpose of interfering with the contract of that person or entity.

MRC states in its complaint that DurretteBradshaw, with knowledge of the contract between MRC and SouthStar, induced SEI to break the SouthStar/SEI contract. MRC does not allege that DurretteBradshaw intended to affect MRC's contract with SouthStar or that DurretteBradshaw acted with the purpose of interfering with that contract. Because MRC did not plead facts supporting such an intention, we hold that MRC did not sufficiently state a cause of action against DurretteBradshaw for tortious interference with MRC's contract with SouthStar.

Conclusion

For the foregoing reasons, we hold that the circuit court erred in overruling DurretteBradshaw's demurrer. Accordingly, we will reverse the judgment of the circuit

9

court and enter final judgment in favor of

DurretteBradshaw.

<u>Reversed and final judgment.</u>