# CIRCUIT COURT OF FAIRFAX COUNTY

Sun Hotel, Inc., et al.

v.

SummitBridge Credit
Investments III, L.L.C., et al.

January 23, 2013

Case No. CL-2012-14062

BY JUDGE R. TERRENCE NEY

These matters came before the Court on January 4, 2013, upon the Defendant Branch Banking and Trust's Plea in Bar and Demurrer to Plaintiffs' Complaint and on January 11, 2013, upon the Defendant SummitBridge Credit Investments III, L.L.C.'s Demurrer to Plaintiffs' Complaint.

After oral arguments the Court took these matters under advisement. The following embodies the Court's ruling.

*Facts*

In 2001, Sun Hotel, Inc. ("Sun Hotel") purchased three parcels of property located on Plank Road in Fredericksburg, Virginia (the "Property") using seller financing, and, subsequently, it refinanced the Property with a loan ("Loan") from Defendant Branch Banking and Trust ("BB&T") in 2004. The Loan was memorialized by a Commercial Note dated February 6, 2004, in the amount $8,550,000 between Sun Hotel as borrower and BB&T as lender. At the same time, Bharat Patel, Nalini Patel, and Jay Patel (collectively the "Patels") each signed a Guaranty Agreement promising payment with regard to Sun Hotel's obligations, then existing or after acquired, to BB&T (the "Guarantees"). In early 2006, Sun Hotel entered into an interest rate swap agreement with BB&T though which Sun Hotel could obtain a fixed interest rate for its variable rate loan.

Sun Hotel signed a Note Modification Agreement ("Modification") and an ISDA Master Agreement ("Master Agreement") with a Schedule to the Master Agreement ("Schedule" and, collectively, the "Swap Agreement") on January 26, 2006, and January 31, 2006, respectively, to lock in a fixed interest rate, given rising interest rates in the market. Through the Swap Agreement documentation, Sun Hotel verified that BB&T was acting only at arm's length and was not Sun Hotel's agent, broker, advisor, or fiduciary in any respect in relation to the Swap Agreement.

For approximately two years after the execution of the Swap Agreement, the LIBOR interest rate rose and the Swap Agreement benefited Sun Hotel. LIBOR then began decreasing in 2008. Eventually, Sun Hotel defaulted under the Loan and the Swap Agreement in November 2011, and, in March 2012, BB&T assigned the Note, Deed of Trust, and Guarantees to SummitBridge Credit Investments III, L.L.C. ("SummitBridge"). SummitBridge sold the Property in a foreclosure sale in March 2012 and then exercised its rights under the Note and related Guarantees to confess judgment against the Patels for the remaining deficiency due under the Loan after crediting the purchase price bid.

*Procedural Background*

On September 18, 2012, Sun Hotel and the Patels filed a Complaint which asserts the following causes of action against BB&T: Count I: Declaratory Judgment, Count II: Fraud, Count III: Constructive Fraud, Count IV: Breach of Fiduciary Duty, Count V: Negligent Misrepresentation, Count VI: Breach of Implied Duty of Good Faith and Fair Dealing, Count VII: Rescission.

The Complaint asserts only a single cause of action for Declaratory Judgment against SummitBridge.

The parties are currently before the Court on BB&T's Plea and Bar and Demurrer to all counts of the Complaint, as well as SummitBridge's Demurrer to Count I of the Complaint.

*Analysis*

A. *Standard of Review on Plea in Bar*

A plea in bar is a defensive pleading, which, if proven, creates a bar to plaintiffs' or counterclaimant's right of recovery. The party asserting the plea in bar bears the burden of proof. *Cooper Industries, Inc. v. Melendez*, 260 Va. 578, 594, 537 S.E.2d 580, 590 (2000).

When the parties do not introduce any evidence but, instead, present the statute of limitations issue to the court based solely on the claim or counterclaim, the court is to accept as true the facts stated in the claim or counterclaim for purposes of resolving the plea in bar. *Schmidt v. Household Fin. Corp., II*, 276 Va. 108, 112, 661 S.E.2d 834, 836 (2008).

B. *Standard of Review on Demurrer*

"A demurrer admits the truth of the facts contained in the pleading to which it is addressed, as well as any facts that may be reasonably and fairly implied and inferred from those allegations. A demurrer does not, however, admit the correctness of the pleader's conclusions of law." *Yuzefovsky v. St. John's Wood Apts.*, 261 Va. 97, 102, 540 S.E.2d 134, 136-37 (2001) (*quoted in DurretteBradshaw, P.C. v. MRC Consulting, L.C.*, 277 Va. 140, 142-43, 670 S.E.2d 704, 705 (2009)). In deciding whether to sustain a demurrer, a trial court must determine "whether the . . . motion for judgment alleged sufficient facts to constitute a foundation in law for the judgment sought, and not merely conclusions of law. To survive a challenge by demurrer, a pleading must be made with sufficient definiteness to enable the court to find the existence of a legal basis for its judgment. In other words, despite the liberality of presentation which the court will indulge, the motion must state a cause of action." *Hubbard v. Dresser, Inc.*, 271 Va. 117, 122-23, 624 S.E.2d 1, 4 (2006) (internal quotation marks and citations omitted).

C. *Declaratory Judgment*

Under Virginia Code § 8.01-184, declaratory relief is available under certain circumstances. The authority to enter a declaratory judgment is discretionary and must be exercised with great care and caution. *USAA Casualty Ins. Co. v. Randolph*, 255 Va. 342, 346, 497 S.E.2d 744, 746 (1988); *Liberty Mut. Ins. Co. v. Bishop*, 211 Va. 414, 421, 177 S.E.2d 519, 524 (1970). In Virginia, enactment of the declaratory judgment statutes did

not vest the courts with authority to render advisory opinions, decide moot questions, or answer merely speculative inquiries. *Reisen v. Aetna Life & Cas. Co.*, 225 Va. 327, 331, 302 S.E.2d 529, 531 (1983); *City of Fairfax v. Shanklin*, 205 Va. 227, 230, 135 S.E.2d 773, 776 (1964).

"A plaintiff has standing to institute a declaratory judgment proceeding if it has a 'justiciable interest' in the subject matter of the proceeding, either in its own right or in a representative capacity. *Henrico County v. F. & W., Inc.*, 222 Va. 218, 223, 278 S.E.2d 859, 862 (1981); *Lynchburg Traffic Bureau v. Norfolk & Western Ry.*, 207 Va. 107, 108, 147 S.E.2d 744, 745 (1966). In order to have a 'justiciable interest' in a proceeding, the plaintiff must demonstrate an actual controversy between the plaintiff and the defendant, such that his rights will be affected by the outcome of the case." *W. S. Carnes, Inc. v. Chesterfield County*, 252 Va. 377, 383, 478 S.E.2d 295, 299 (1996).

Here, the Declaratory Judgment count is based on an allegation of fraud. Because the underlying action is fraud, a two year statute of limitations applies. *See Board of Supervisors of Fairfax v. Thompson Assocs.*, 240 Va. 133, 139, 393 S.E.2d 201 (1990). Therefore, this claim is time-barred as it was not filed until 2012 and the alleged fraud reasonably should have been discovered by January 2006 when the Swap Agreement was signed.

Even if this Court found that the claim was not time-barred, the claim for declaratory judgment is dismissed based on the fact that no actual controversy exists between the parties. The language of the Loan documents, Swap Agreement, and Guarantees are clear. Sun Hotel and the Patels did not take issue with the provisions in any of these documents until the Swap Agreement no longer worked in their favor. They now quarrel with the various documents because they are unhappy with their choice to enter into some of the agreements. The agreements are binding, and they contain clear and unambiguous language. Sun Hotel and the Patels cannot back out of them by inventing a controversy that does not exist.

D. *Fraud and Constructive Fraud*

Fraud is the intentional misrepresentation of a material existing or past fact which is made for the purpose of inducing reliance by the Plaintiff and which in fact does justify resulting reliance by the Plaintiff. *Robberecht v. Maitland Brothers*, 220 Va. 109, 255 S.E.2d 682 (1979). It is fundamental that for there to be fraud there must be a duty that exists independent of contract. *Augusta Mutual Ins. Co. v. Mason*, 274 Va. 199, 645 S.E.2d 290 (2007).

To plead fraud the plaintiff must allege: "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *Evaluation Research Corp. v. Alequin*, 247 Va. 143, 148, 439 S.E.2d 387, 390 (1994). "Where fraud is relied on, the [pleading] must show

specifically in what the fraud consists, so that the defendant may have the opportunity of shaping his defense accordingly, and, since [fraud] must be clearly proved, it must be distinctly stated." *Mortarino v. Consultant Eng'g Servs.*, 251 Va. 289, 295, 467 S.E.2d 778, 782 (1996) *(quoting Ciarochi v. Ciarochi*, 194 Va. 313, 315, 73 S.E.2d 402, 403 (1952)). "What is more, an allegation of fraud in the abstract does not give rise to a cause of action; it must be accompanied by [factual] allegation and proof of damage." *Klaiber v. Freemason Assocs.*, 266 Va. 478, 485, 587 S.E.2d 555, 558 (2003).

The elements of a cause of action for constructive fraud are "a showing by clear and convincing evidence that a false representation of a material fact was made innocently or negligently, and the injured party was damaged as a result of his reliance upon the misrepresentation." *Blair Constr., Inc. v. Weatherford*, 253 Va. 343, 346-47, 485 S.E.2d 137, 138-39 (1997). "Constructive fraud differs from actual fraud in that the misrepresentation of material fact is not made with the intent to mislead, but is made innocently or negligently although resulting in damage to the one relying on it." *Cohn v. Knowledge Connections*, 266 Va. 362, 369, 585 S.E.2d 578, 582 (2003).

Sun Hotel and the Patels have failed to adequately plead a cause of action for fraud and constructive fraud. Specifically, they have failed to plead reasonable reliance on any alleged misrepresentations by BB&T. The conclusory allegation that "but for the representations [by BB&T that the Swap was an appropriate vehicle for Sun Hotel to use to manage interest-rate risk when] the Patels never would have permitted Sun Hotel to enter into the Swap," cannot withstand demurrer. Even accepting as true the allegations in the Complaint, it is not facially sustainable that BB&T made any promises of performance other than what was stated in the language of the agreements. It is not credible for the Patels to believe that any oral representations not contained in the written agreements would, in effect, obviate the written agreements.

Under Virginia Code § 8.01-243(A), "every action for damages resulting from fraud shall be brought within two years after the cause of action accrues." In Virginia Code § 8.01-249, the language "by the exercise of due diligence reasonably should have been discovered" means "[s]uch a measure of prudence, activity, or assiduity, as is properly to be expected from, and ordinarily exercised by, a reasonable and prudent man under the particular circumstances; not measured by any absolute standard, but depending on the relative facts of the special case." *STB Marketing Corp. v. Zolfaghari*, 240 Va. 140, 393 S.E.2d 394 (1990) *(citing Black's Law Dictionary* 411 (rev. 5th ed. 1979)). This is not an absolute standard; it is case specific. *STB Marketing*, 240 Va. at 144, 393 S.E.2d at 397.

"[I]n cases involving elements of fraud, a statute of limitations can be said to begin to run when the fraud is, or upon reasonable inquiry and due diligence should have been, discovered." *Maine v. Leonard*, 365 F. Supp. 1277, 1280-81 (W.D. Va. 1973). The duty of reasonable diligence is

determined by the "peculiar circumstances of each case." *Id.* (*citing deHaas v. Empire Petroleum Co.*, 435 F.2d 1223, 1226 (10th Cir. 1970)).

The fraud claim is also time barred. Fraud claims in Virginia are subject to a two year statute of limitations, Va. Code Ann. § 8.01-243(A), and the two year statute of limitations began to run at the latest in January 2006 when the Swap Agreement was signed. The Patels should have reasonably discovered that the documents did not render the Guarantees non-recourse. The documents that they signed in January 2006 specifically reference the Guarantees. Additionally, the accompanying Credit Support Documents also specifically stated that the Guarantees were incorporated and remained in full force and effect. A reasonably prudent person would have read the Loan documents he signed and recognized that the Guarantees remained in full force and effect in January of 2006. *See Bear Ridge Developers, L.L.C. v. Cooper*, 78 Va. Cir. 50, 53 (Fairfax 2008).

Additionally, the language of the Guarantees specifically prohibits oral modification and waiver: "it is understood that nothing shall discharge or satisfy the Guarantor's liability hereunder except the full performance and payment of all Obligations with interest and expenses, or the Bank's written release of the Guarantor's liability." The Guarantees also state that "[n]o modification or waiver of any provision of this Guaranty shall be effective unless it is in writing and signed by the Bank." Since the Patels had nothing in writing from BB&T, they reasonably should have known that the Guarantees were still enforceable in January 2006 when they signed the Swap Agreement. Their claims to the contrary are not sustainable. The claim for fraud filed in 2012 comes too late.

## E. *Negligent Misrepresentation*

Negligent misrepresentation sounds in fraud. *Hansen v. Stanley Martin Cos.*, 266 Va. 345, 354, 585 S.E.2d 567, 573 (2003). Furthermore, the Supreme Court of Virginia has stated that negligent misrepresentation is not an exception to the economic loss rule. *Ward v. Ernst & Young*, 246 Va. 317, 324, 435 S.E.2d 628, 631 (1993).

The Supreme Count of Virginia has held that "the elements of a cause of action for constructive fraud are a showing by clear and convincing evidence that a false representation of a material fact was made innocently or negligently, and the injured party was damaged as a result of his reliance upon the misrepresentation." *Mortarino v. Consultant Eng'g Services*, 251 Va. 289, 295, 467 S.E.2d 778, 782 (1996) (citations omitted).

Because there is no separate claim for negligent misrepresentation in Virginia, this Count of the Complaint is dismissed as the Patels already assert a claim for constructive fraud against BB&T.

*F. Breach of Fiduciary Duty*

In order to state a claim for breach of fiduciary duty, Plaintiff must plead the (a) duty, (b) breach, and (c) damages sustained. *See Koschene v. Hutchinson*, 73 Va. Cir. 103, 106 (2007) (*citing Carstensen v. Chrisland Corp.*, 247 Va. 433, 444, 442 S.E.2d 660, 667 (1994)).

A fiduciary relationship exists "when special confidence has been reposed in one who in equity and good conscience is bound to act in good faith and with due regard for the interests of the one reposing the confidence." *Allen Realty Corp. v. Holbert*, 227 Va. 441, 446, 318 S.E.2d 592, 595 (1984). To survive demurrer, the plaintiff must plead facts sufficient to support the existence of a fiduciary relationship. *See Mack v. Orion Inv. Corp.*, 2002 Va. Cir. LEXIS 468 (Norfolk, 2002) (sustaining demurrer with leave to amend where plaintiff failed to plead any facts in his Complaint to give rise to even an inference that the parties' relationship was anything other than a typical creditor-debtor relationship in which Defendant undertook no duty other than to loan funds pursuant to the agreement); *Lewin Group v. Grubb & Ellis Co.*, 2001 Va. Cir. LEXIS 160, *1-3 (Fairfax, 2001) (overruling demurrer to a claim for breach of fiduciary duty where plaintiff alleged that, by appointing defendants as its construction agents, a fiduciary relationship was created); *Ozberkmen v. Capital Asset Mgmt.*, 29 Va. Cir. 18, 20 (Fairfax, 1992) (overruling demurrer to a claim for breach of fiduciary duty where plaintiff alleged that, by accepting The Plan's money for the purpose of investing it on The Plan's behalf, the defendants assumed a fiduciary relationship with The Plan).

Breach of fiduciary duty claims can arise out of both contract and tort. "To avoid turning every breach of contract into a tort, however, we have enunciated the rule that, in order to recover in tort, 'the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract'." *August Mutual Ins. Co. v. Mason*, 274 Va. 199, 205, 645 S.E.2d 290 (*quoting Foreign Mission Bd. v. Wade*, 242 Va. 234, 241, 409 S.E.2d 144, 148 (1991)). "The determination whether a cause of action sounds in contract or tort depends on the source of the duty violated." *Id.* A plaintiff must identify a breach of duty arising from a source other than its contractual relationship with the Defendant. *Id.* at 206.

Here, the breach of fiduciary duty claim is also time barred because an action for breach of fiduciary duty must be filed within two years from the date of the alleged breach. Va. Code Ann. § 8.01-248. The alleged misconduct leading to the breach of duty took place before the Swap Agreement was signed in January 2006. The breach of fiduciary duty claim was not filed until 2012 and was therefore not filed within the two year statute of limitations period.

Furthermore, the agreement between the parties specifically states: "for any Relevant Agreement: Each party represents to the other party that it

acts as principal and not as agent, (ii) it acknowledges that the other party acts only at arm's length and is not agent, broker, advisor, or fiduciary in any respect. . . ." And there is no evidence that the parties' relationship was anything other than a typical creditor-debtor relationship in which BB&T undertook no duty other than to loan funds pursuant to the agreement. *See Mack v. Orion Inv. Corp.*, 2002 Va. Cir. LEXIS 468 (Norfolk, 2002). Since there was no duty, there can be no breach of a duty.

### G. *Breach of Implied Duty of Good Faith and Fair Dealing*

The Supreme Court of Virginia has held that, "when parties to a contract create valid and binding rights, an implied covenant of good faith and fair dealing is inapplicable to those rights." *Ward's Equipment v. New Holland North America*, 254 Va. 379, 385, 493 S.E.2d 516, 520 (1997). Notwithstanding, one Federal District Court, in dicta, has stated that "in Virginia, every contract contains an implied covenant of good faith and fair dealing." *Daisuke Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443, 450 (E.D. Va. 2009) (*quoting Virginia Vermiculite, Ltd. v. W. R. Grace & Co.*, 156 F.3d 535, 541-42 (4th Cir. 1998)). The *Daisuke* Court distinguished *Ward's* by noting that that case only addressed conduct that defendant was *explicitly* authorized to undertake by the contract. 624 F. Supp. 2d at 450 (emphasis added). Additionally, the court in *Daisuke* noted that, while "the duty of good faith does not prevent a party from exercising its explicit contractual rights, a party may not exercise contractual discretion in bad faith, even when such discretion is vested solely in the party." *Id.* In other words, a defendant cannot breach an implied covenant of good faith and fair dealing by exercising his explicit rights under a contract even though in a manner that a plaintiff does not like.

In order for a claim for breach of implied covenant of good faith and fair dealing to be properly pleaded, the plaintiff must not "seek redress through an implied covenant claim merely for defendant's unfavorable exercise of its explicit contractual rights." *Id.* A plaintiff must do more than make claims of a defendant's unfavorable exercise of its contractual rights; a plaintiff must allege bad faith and unfair dealing in a contractual relationship. *Id.* at 451.

The parties do not dispute that the Agreement is governed by the laws of the State of North Carolina. Under North Carolina law, a breach of the implied duty of good faith and fair dealing is subject to a three year statute of limitations. N.C. Gen. Stat. § 1-52(1) (2012); *BDM Invs. Lenhil, Inc.*, 2012 NCBC 7, 61 (Brunswick Cnty. 2012). The statute begins to run when the cause of action accrues. *Id.* Here, Sun Hotel and the Patels delayed until 2012, three years after the statute of limitations expired, to bring their suit. Thus, this claim is also time-barred.

Moreover, this claim also fails because an obligation cannot be implied when it would be inconsistent with the express terms of the contractual

relationship. By signing the Swap Agreement documents, Sun Hotel certified that it was relying solely on its own evaluation of the Relevant Agreement and upon advice from its own professional advisors. A defendant does not breach any ostensible duty of good faith and fair dealing by exercising its explicit rights, such as those here, under a contract.

## H. *Rescission*

Rescission of a contract is a form of equitable relief that is principally available in cases of fraud, illegality, mistake, duress, disability, or undue influence. *Rison v. Newberry*, 90 Va. 513, 18 S.E. 916 (1894). Breach of contract can also warrant rescission; however, a partial or insubstantial breach does not warrant rescission. *Bolling v. King Coal Theatres*, 185 Va. 991, 999, 41 S.E.2d 59, 63 (1947). "Ordinarily, rescission will not be granted for breach of a contract which is not of such substantial character as to defeat the object of the parties in making the contract or where the remedy at law is plain, adequate, and complete." *Id.* at 996, 41 S.E.2d at 62 (*citing* 9 Am. Jur., *Cancellation of Instruments*, sec. 7, p. 354; sec. 28, p. 374; *Rison v. Newberry*, 90 Va. 513, 522, 18 S.E. 916 (1894); *Newberry v. Ruffin*, 102 Va. 73, 45 S.E. 733 (1903); *Gall v. Tygart's Valley Bank*, 50 W. Va. 597, 40 S.E. 390 (1901); *Holderby v. Harvey C. Taylor Co.*, 87 W. Va. 166, 104 S.E. 550 (1920).

> Mere failure to read a deed or other instrument before signing it, by a person who is able to read and understand it, being only negligence of the injured party, not importing fraudulent conduct on the part of him who obtains the benefit of it, is not ground for setting the instrument aside. Equity never relieves a party from his own deliberate acts, done with full knowledge of the facts.

*Harper v. Rogers*, 182 W. Va. 311, 316, 387 S.E.2d 547, 552 (1989) (*citing Hale v. Hale*, 62 W. Va. 609, 59 S.E. 1056 (1907)).

Because there does not appear to be any colorable indication of fraud on the part of BB&T and because there is clearly no evidence of illegality, mistake, duress, disability, or undue influence, rescission would be inappropriate. Additionally, BB&T did not substantially, or even partially, breach any of the contracts between the parties; so rescission is unavailable on that ground as well. Finally, the Patels' argument that they did not understand what they were signing does not warrant rescission either.

## I. *Statute of Frauds*

The Statute of Frauds in Virginia states in pertinent part that:

> Unless a promise, contract, agreement, representation, assurance, or ratification, or some memorandum or note thereof, is in writing and signed by the party to be charged or his agent, no action shall be brought in any of the following cases . . . upon any agreement that is not to be performed within one year.

Va. Code Ann. § 11-2(8).

Here, none of the agreements at issue were to be performed within one year. As a result, the agreements themselves and any modifications to them must have been in writing.

In addition, the language of the Guarantees specifically prohibits oral modification and waiver: "it is understood that nothing shall discharge or satisfy the Guarantor's liability hereunder except the full performance and payment of all Obligations with interest and expenses, or the Bank's *written release* of the Guarantor's liability." Guarantees (emphasis added). The Guarantees also state that "[n]o modification or waiver of any provision of this Guaranty shall be effective *unless it is in writing* and signed by the Bank." *Id.*

Sun Hotel and the Patels argue that a written contract can be orally modified even if it contains a specific provision that oral modification is invalid. For this proposition, they rely on *Reid v. Boyle*, 259 Va. 356, 527 S.E.2d 137 (2000). In *Reid*, the plaintiff filed suit against his former business partner for his portion of the profits from a business venture. When the plaintiff began working with the defendants, they entered into an employment agreement, which outlined plaintiffs yearly compensation. Plaintiff and defendants entered into a new and different business venture during the course of plaintiffs' employment with defendants, which was not covered by the original employment agreement. In his suit, plaintiff alleged that he was to receive a certain portion of the profits from the new business venture based on an oral agreement which modified his then existing employment agreement. Defendants contended that plaintiff could not establish that defendants owed plaintiff anything other than the compensation contained in the original employment agreement. *Id.*

The Supreme Court of Virginia found that the plaintiff presented sufficient evidence that he and the defendants had orally modified the original written agreement. *Id.* at 370, 527 S.E.2d at 145. In arriving at its decision, the Court revisited the principles of oral modification of a written contract:

> A contract in writing, but not required to be so by the statute of frauds, may be dissolved or varied by a new oral contract, which may or may not adopt as part of its new terms some or all of the provisions of the original written contract. . . . Nor

does it make any difference that the original written contract provided that it should not be substantially varied except by writing. This stipulation itself may be rescinded by parol and any oral variation of the writing which may be agreed upon and which is supported by a sufficient consideration is by necessary implication a rescission to that extent.

*Id.* at 369, 527 S.E.2d at 144-45 (internal citations omitted).

In addition, "modification of a contract must be shown by 'clear, unequivocal, and convincing evidence, direct or implied'." *Id.* (*citing Stanley's Cafeteria, Inc. v. Abramson*, 226 Va. 68, 73, 306 S.E.2d 870, 873 (1983)).

Here, as previously discussed, this contract is required to be in writing by the statute of frauds because it cannot be performed within a year. Moreover, the original written agreement specifically prohibits oral waiver or modification *and* there can be no parol evidence or sufficient consideration to show that any alleged oral waiver or modification rescinded that provision.

Finally, Sun Hotel and the Patels have not shown "clear, unequivocal, and convincing evidence, direct or implied," *id.*, which demonstrates oral modification. To the contrary, this suit arose because BB&T assigned the Note to SummitBridge and SummitBridge foreclosed on the Property. This in itself shows that there was no modification of the original terms of the Note. SummitBridge would never have accepted such an assignment otherwise.

Additionally, in *Lindsay v. McEnearney*, McEnearney Associates filed a warrant in debt against Lindsay and alleged that Lindsay breached a written "Exclusive Right to Represent Buyer Agreement" which gave McEnearney Associates the exclusive right to represent Lindsay in any real estate transactions for the purchase of a home. 260 Va. 48, 50, 531 S.E.2d 573, 573 (2000). The written agreement required Lindsay to pay the broker a three percent commission of the sales price on any home that Lindsay purchased between August 1997 and November 1997. *Id.*

McEnearney alleged that Lindsay breached the written agreement when she only paid a one percent commission instead of a three percent commission to the broker. Lindsay alleged that she and a real estate agent orally modified the written agreement and was only required to pay a one percent commission based on this oral modification because she had negotiated the price and terms of the sale without the help of an agent. *Id.* at 51, 531 S.E.2d at 573. Lindsay's defense was that the terms of the written agreement had been orally modified. The circuit court granted McEnearney Associates' motion for summary judgment and Lindsay appealed. *Id.*

On appeal, Lindsay argued that the Statute of Frauds did not apply to the written agreement that she signed with McEnearney Associates. *Id.* at

52, 531 S.E.2d at 574. The Virginia Supreme Court held that, because the Statute of Frauds required that the contract be in writing because it was an "'agreement or contract for services to be performed in the sale of real estate by a party defined in § 54.1-2100 or § 54.1-2101,' any modification to that contract must also be in writing and signed by the party to be charged or his agent." *Id.* at 53, 531 S.E.2d at 575 (*citing* Va. Code Ann. § 11-2(7)). The court acknowledged that, "in certain circumstances, written contracts, even those that contain prohibitions against unwritten modifications, may be modified by parol agreement. *Id.* at 53, 531 S.E.2d at 575. However, the court went on to state that "this principle does not apply to an agreement which must be in writing to satisfy [the Statute of Frauds]." *Id.*

Again, here the Guarantees were required to be in writing pursuant to the Statute of Frauds. Therefore, they may not be modified or waived orally. Modification or waiver would only be valid if in writing.

### J. Laches

The doctrine of laches applies to equitable principles. Ordinarily, laches is a mixed legal and factual issue and cannot be raised by demurrer. *See Pittman v. Pittman*, 208 Va. 476, 479, 158 S.E.2d 746, 749 (1968). If, however, all the elements of a laches claim are apparent in the Complaint, laches can properly be raised on demurrer.

To prove laches, a defendant must show that a plaintiff knew of her rights and that an extensive delay took place between the accrual of the rights and the filing of the cause of action such that the defendant could reasonably assume the claim had been abandoned. *See Meredith v. Goodwyn*, 219 Va. 1025, 1028-29, 254 S.E.2d 74, 76 (1979). Notwithstanding the distinction between equity and law, the doctrine of laches cannot act to shorten the applicable statute of limitation. *United States v. Lomas Mortgage, USA, Inc.*, 742 F. Supp. 936, 939 (4th Cir. 1990) (*quoting Hagan Estates, Inc. v. New York Mining & Manufacturing Co.*, 184 Va. 1064, 37 S.E.2d 75 (1946)) ("It is axiomatic that equity follows the law. Where a legal demand is asserted in equity which is not barred at law by the applicable statute of limitations, neither is it barred in equity.").

Because the statute of limitations bars this action, it is not necessary for the court to consider any application of the doctrine of laches.

### Conclusion

Because Sun Hotel and the Patels' claims are asserted well beyond the applicable limitations periods and because Plaintiffs have failed to sufficiently plead the various causes of action asserted against BB&T, the Plea in Bar and Demurrer are sustained on all counts. Additionally, because the only count asserted against SummitBridge, Declaratory Judgment, is not

sufficiently based for the reasons stated herein as to BB&T, SummitBridge's Demurrer is also sustained.